MRS. ETHEL DESHA RUSSELL, WIDOW, MARY DAY RUSSELL, DAUGHTER, AND GRADY JACKSON RUSSELL, SON OF LONNIE G. RUSSELL, DECEASED, v. WESTERN OIL COMPANY, EMPLOYER, AND MARYLAND CASUALTY COMPANY, CARRIER.

(Filed 11 April, 1934.)

1. **Master and Servant F a—Evidence held sufficient to support finding that deceased was an employee and not an independent contractor.**

Evidence that an oil company owned a filling station for the sale of its products and obtained a license therefor and retained full control over its operation and the persons working thereat, including the right of firing such persons, and put an operator in charge of the station to be paid a certain sum per gallon of gasoline sold thereat, directed the hours

during which the station should be open and to whom credit should be given, and upon the death of such operator by accident arising out of and in the course of his work, filed a report on a form furnished by the Industrial Commission stating that the relationship of employer and employee existed between the company and the operator, and took over all unsold gasoline at the station as its own *is held* sufficient to support a finding by the Industrial Commission that the operator was an employee within the meaning of the Compensation Act, and the finding is conclusive upon appeal from the award of compensation, the distinction between an employee and an independent contractor depending primarily upon the principal's retention of control.

2. **Master and Servant F d—Report of company to Industrial Commission held competent on question of whether deceased was an employee.**

A report filed by the president of a company on blanks furnished by the Industrial Commission stating that the company was the employer and the deceased was its employee *is held* competent evidence before the Industrial Commission on the question of whether the deceased was an employee or an independent contractor. ·

3. **Master and Servant F i—**

The recitation of the award of the Industrial Commission in the judgment of the Superior Court affirming the award upon appeal will not be held for prejudicial error where the award is for a death claim and the amount is definitely fixed.

4. **Master and Servant F k: Constitutional Law G a: Provision for taxing cost of appeal on insurer is constitutional and valid.**

The provisions of the Compensation Act, N. C. Code, 8081(rrr), that upon appeal from an award brought by the insurer the court or the Industrial Commission might tax the costs of the appeal, including reasonable attorney's fee for the claimant, against the insurer when it is determined that claimant is entitled to compensation, is valid and is not in contravention of the Fourteenth Amendment to the Federal Constitution.

APPEAL by defendants from *McElroy, J.,* at November Term, 1933, of BUNCOMBE. Affirmed.

This was a claim under the Workmen's Compensation Act, in which the claimants sought compensation for the death of Lonnie G. Russell under the provisions of the North Carolina Workmen's Compensation Act. The defendants denied liability on the ground that at the time of the death of Lonnie G. Russell he was not an employee of the Western Oil Company.

A hearing was had in the matter before John C. Root, deputy commissioner, on 13 February, 1933, and an opinion filed 14 March, 1933, by Commissioner T. A. Wilson, directing an award in favor of the claimants. Thereafter, an award was duly made on 16 March, 1933, in favor of the claimants. From this award, the defendants appealed to the full Commission, and the case came on for argument on 19 Sep-

tember, 1933, before the full Commission. Commissioner Dorsett, under date of 21 September, 1933, wrote an opinion for the full Commission directing that the award theretofore entered in favor of the claimants be affirmed, and under date of 22 September, 1933, a formal award of the Industrial Commission was made directing the payment of death benefits to the claimants.

From this award, the defendants appealed to the Superior Court, and the case came on for hearing at the regular November Term, 1933, of the Superior Court of Buncombe County before the Hon. P. A. McElroy. After hearing argument of counsel, the court signed the judgment appearing in the record, affirming the decision of the Industrial Commission, and in addition thereto, directing the defendants to pay the costs of the appeal and directing that such costs shall include the attorneys' fees for the claimants, to be determined by the North Carolina Industrial Commission.

The judgment also held that the defendants' objection to the introduction of certain reports made by the Western Oil Company to the North Carolina Industrial Commission should be overruled, and that said reports were competent evidence to be considered by the Industrial Commission. To this judgment, and each and every part thereof, the defendants objected and excepted and gave notice of appeal to the Supreme Court of North Carolina, and all further notice of appeal was waived by the plaintiffs. Appeal bond in the sum of $50.00 was adjudged sufficient.

The defendants admit that on the night of 27 September, 1932, Lonnie G. Russell was shot and killed in a hold-up of a filling station at the intersection of Charlotte Street and Woodfin Street. The defendants made the following exceptions and assignments of error and appealed to the Supreme Court:

"1. The Superior Court erred in overruling defendants' exception to the introduction of the report of accident on the Industrial Commission Form No. 19, for the reason that the said form was incompetent, immaterial and irrelevant, and further, for the reason that the said form is made out by the North Carolina Industrial Commission and required to be filed by them and is not binding on the defendants.

2. The Superior Court erred in signing the judgment appearing in the record, for that the said judgment is based on an erroneous conclusion of law, in that it holds that Lonnie G. Russell at the time of his death was an employee of the Western Oil Company, when all of the evidence shows that he was not such an employee.

3. The Superior Court erred in signing the judgment appearing in the record, for that it holds that the report of accident filed by the defendants with the North Carolina Industrial Commission, pursuant to

the rules of said Commission and on the form made out by the said Commission, being Form No. 19, is competent evidence to establish that Lonnie G. Russell was an employee of the Western Oil Company, at the time of his death.

4. The Superior Court erred in signing the judgment appearing in the record, for that the said judgment attempts to direct the payment of benefits to the claimants, which is a matter exclusively within the jurisdiction of the Industrial Commission.

5. The Superior Court erred in signing the judgment appearing in the record, for that the said judgment directs that the costs be taxed against the defendant and that said costs shall include a reasonable attorneys' fee for plaintiffs' counsel, which is a matter exclusively within the jurisdiction of the Industrial Commission.

6. The Superior Court erred in signing the judgment appearing in the record, for that the said judgment overrules defendants' objection and exception to the award of the Industrial Commission directing payment of benefits under the Compensation Act to the claimants."

The material facts will be set forth in the opinion.

*R. R. Williams for plaintiff.*
*Johnston & Horner for defendants.*

CLARKSON, J. The following questions are involved on this appeal: (1) Was Lonnie G. Russell at the time of his death, an employee of the Western Oil Company within the meaning of the Workmen's Compensation Act of North Carolina? We think so.

(2) Is the report of accident made by the defendant employer to the Industrial Commission competent evidence before the trial Commissioner? We think so.

(3) Is the judgment erroneous because, after affirming the award of the Industrial Commission, it recites the terms of said award? We think not.

(4) Is section 8081(rrr) of the Consolidated Statutes of North Carolina constitutional? We think so.

The first question: Was Lonnie G. Russell an employee of the Western Oil Company? We think so. The evidence of plaintiff was to the effect that the Western Oil Company was the owner of the service station on the corner of Charlotte and Woodfin streets in the city of Asheville, N. C. "That is the only filling station we operate direct." The contract dated 2 September, 1932, between Russell and the Western Oil Company, says: "The station to be operated under direction and control of Western Oil Company." Russell to sell the Western Oil Company gasoline on a margin of 2 cents per gallon and keep the station open from 6:00

o'clock a.m. to 10:30 p.m., etc.   J. Ray Stephens was working at the time, as service station operator, when Russell was killed and was employed by the president of the Western Oil Company, Incorporated.  The president came around 3 or 4 times a day.  The accounts of oil and gasoline sold on a credit were on forms furnished by the Western Oil Company and kept by them and those to whom credit was given, were designated by the president.  The license to run the station was paid by Western Oil Company.  W. A. McGeachey, witness for defendant, testified in part: "When this matter of giving this station to Mr. Russell to operate came up, Mr. Shuey, president of Western Oil Company, said, 'We want to have that station absolutely under our control and supervision, so we can dictate at any time the method of operation and can have full control of the station.'  One of our objects, of course, was to keep it up to the standard which Mr. Shuey had set for it, and in addition to that we wanted the right to have complete control of everybody that worked at this station and the employees of the station, if necessary; if one should become unsatisfactory to the Western Oil Company, we wanted the right to go in and replace that employee."  . . .  "Mr. Shuey gave instructions to Russell as to how that filling station should be run more than I did, because he was the boss."  . . .  "We were paying and guaranteeing Mr. Russell as a part of his employment a two-cent per gallon commission on the gas he sold."  . . .  "When Mr. Russell died, the Western Oil Company took over the gasoline in that station; they took it over as their gasoline."

In the employer's report of accident to employee, signed by W. C. Shuey, president, is the following: "(1) Name of employer—Western Oil Company."  "(16) Name of injured employee—Lonnie Grayden Russell."  In *Aderholt v. Condon*, 189 N. C., 748 (755), we find: "The test of independence and agency or servant is laid down in 14 R. C. L., pp. 67-8, as follows: 'The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor.'"  The case of *Creswell v. Publishing Co.,* 204 N. C., 380, is readily distinguishable from the facts in this case.

In *Webb v. Tomlinson*, 202 N. C., 860 (861), is the following: "The evidence on the mooted question as to whether the deceased was an employee or an independent contractor is susceptible of either interpretation. The findings of the Industrial Commission, therefore, are conclusive and binding as to all questions of fact."

The second question: As to the report of the accident filed with the Industrial Commission by the Western Oil Company, we think it com-

petent evidence. The Western Oil Company, a corporation, by its president, signed the report. He was *sui juris.* No fraud or mistake is set up. It was in the nature of an admission and competent to be considered in passing on the fact as to whether Russell was an employee.

The third question: As to the judgment of the court below being erroneous; that in affirming the award of the Industrial Commission, it recites the terms of the award. We do not think this, if error, prejudicial. In *Francis v. Wood Turning Co.,* 204 N. C., 701 (704), it is said: "There is error, however, in the judgment directing that an award be made to the plaintiff for compensation to be paid by the defendants in accordance with the provisions of the North Carolina Workmen's Compensation Act. The North Carolina Industrial Commission, alone, has jurisdiction to find the facts on which the liability of the defendants must be determined. *Winberry v. Farley Stores, Inc., ante,* 79, 167 S. E., 475."

The judgment of the court below affirms the judgment of the N. C. Industrial Commission and reiterates its terms. N. C. Code 1931 (Michie), 8081(bbb), is as follows: "Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any moneys paid but no such review shall be made after twelve months from the date of the last payment of compensation pursuant to an award under this chapter."

Defendants contend that the judgment under this section should merely affirm or reverse the decision, but on this record the judgment is not prejudicial. This is a death claim where the amount is fixed definitely.

The fourth question: Is 8081(rrr), N. C. Code of 1931 (Michie), constitutional? We think so. The section is as follows: "If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this chapter, shall find that such hearing or proceedings were brought by the insurer, and the Commission or court by its decision, orders the insurer to make, or to continue, payments of compensation to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings, including therein reasonable attorney's fee to be determined by the Commission, shall be paid by the insurer as a part of the bill of costs."

· Defendants contend that this impinges the Fourteenth Amendment to the Constitution of the United States, that "the employer and the in-

surer are both defendants in the case, and any act which puts a greater
burden or penalty on one defendant than it puts on the other is a clear
discrimination and denies to the two defendants, the equal protection
of the laws and is void and inoperative." The insurer is practically the
real party to the controversy and controls the litigation. This very pro-
vision was considered and approved in *Williams v. Thompson,* 203
N. C., 717 (720).

In *Ahmed's case* (Mass.), 79 A. L. R., 669, this question of cost and
attorney's fees was fully considered citing cases from the United States
Supreme Court and the opinion by *Chief Justice Rugg,* sustains fully
the plaintiff's contention. (Headnote (1) is as follows: "A statute pro-
viding that a workmen's compensation insurer seeking review by the
reviewing board of an award and ordered to make or continue payments
shall pay the cost to the injured employee of such review, including
reasonable counsel fees, but not providing for the allowance of costs or
counsel fees to the insurer if successful, and operating to impose them
on an insurer successful in getting an award reduced, does not deprive
the insurer of the equal protection of the laws, or of property without
due process of law, or infringe the constitutional right to obtain justice
without purchase." For the reasons given, the judgment of the court
below is

Affirmed.